**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL PENSION FUND, CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL WELFARE FUND, CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL RETIREE HEALTH AND WELFARE FUND, and CATHERINE WENSKUS, not individually but as Administrator of the Funds,** | ) | |
| | ) | **Case No.: 26 cv 10831** |
| **and** | ) | |
| | ) | **Judge:** |
| **CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO & VICINITY,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| **ORO STONE LANDSCAPING, LLC, an Illinois limited liability corporation, and ORO STONE LANDSCAPING 1, LLC, an Illinois limited liability corporation,** | ) | |
| **Defendants.** | ) | |

**AMENDED COMPLAINT**

NOW COMES Plaintiffs, Chicago & Vicinity Laborers' District Council Pension Fund, Chicago & Vicinity Laborers' District Council Welfare Fund, Chicago & Vicinity Laborers' District Council Retiree Health and Welfare Fund, and Catherine Wenskus, in her capacity as Administrator of the Funds (collectively herein the "Funds"), by their attorneys, Patrick T. Wallace, Amy N. Carollo, G. Ryan Liska and Sara S. Schumann; and the Construction and General Laborers' District Council of Chicago & Vicinity (the "District Council" or "Union") by its attorneys, Joanna Barrera and Mary Colleen Kilbride, for their Complaint against Defendants Oro

Stone Landscaping, LLC, and Oro Stone Landscaping 1, LLC both limited liability corporations with the State of Illinois.

## FACTS COMMON TO ALL COUNTS

1. Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and (2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

2. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3. The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust ("Trust Agreements") in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

4. Plaintiff Catherine Wenskus is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General Laborers' District Council of Chicago & Vicinity Training Fund, the Industry Funds, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the District Council. With respect to such matters, Wenskus is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5. The Union is a labor organization within the meaning of the LMRA, 29 U.S.C. §185(a). The Union operates and maintains its offices within this District, with its principal office located at 999 McClintock Drive, Burr Ridge, Illinois. The Union negotiates collective bargaining agreements for and on behalf of its affiliated local unions, including Laborers' Local One.

6. Defendant Oro Stone Landscaping, LLC ("Oro") is an Illinois limited liability corporation registered with the state, and, at all times relevant, Oro conducts business within this District and is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

7. Defendant Oro Stone Landscaping 1, LLC ("Oro 1") is an Illinois limited liability corporation registered with the state that also does business as Oro, and, at all times relevant, conducts business within this District and is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c). Oro 1 is being sued as Oro's alter ego and/or on a single employer theory, based on the formation date of Oro 1, the lack of reporting of Oro, since Oro 1 formation, and other evidence, including the findings of a Joint Grievance Committee Award in a 301 Enforcement Action (See Counts III and IV below).

8. Oro and Laborers' Local One are parties to collective bargaining agreements, at least since June 9, 2017 (A true and accurate copy of Oro's Memorandum Agreement entered into between Local One and Oro that adopts and incorporates several Master Agreements between the Union and various employer associations, and also binds Oro to the Funds respective Trust Agreements, is attached hereto as Exhibit A-1). The Memorandum Agreement and the Master Agreements together are referred to as the CBA or the Agreement (A true and accurate copy of CAICA that is one of the Master Agreements is attached hereto as Exhibit A-2).

9. The Funds have been duly authorized by the Union to act as collection agent for the Construction and General Laborers' District Council of Chicago & Vicinity Training Fund ("Training Fund"), Midwest Construction Industry Advancement Fund ("MCIAF"), Mid-American Regional Bargaining Association Industry Advancement Fund ("MARBA"), Chicagoland Construction Safety Council ("Safety Fund"), Laborers' Employers' Cooperation and Education Trust ("LECET"), Concrete Contractors Association ("CCA"), CDCNI/CAWCC Contractors' Industry Advancement Fund ("Wall & Ceiling Fund"), CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), Will Grundy Industry Trust Advancement Fund ("WGITA"), Illinois Environmental Contractors Association Industry Education Fund ("IECA Fund"), Illinois Small Pavers Association Fund ("ISPA"), and Chicago Area Independent Construction Association ("CAICA"), in the collection of contributions due to those funds that are collectively referred to as the Industry Funds or Ancillary Funds.

10. The Funds' respective Trust Agreements obligate Oro to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, retiree health and welfare benefits and for the training fund and to submit monthly remittance reports in which Oro, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee. Pursuant to the terms of the Agreement and the Funds respective Trust Agreements, contributions which are not submitted in a timely fashion are assessed liquidated damages and interest.

11. The Pension, Welfare, Retiree Health and Welfare Funds respective Trust Agreements provide the respective Trustees with the powers to formulate, establish and maintain

collection procedures for the collection of contributions, and those actions, procedures and policies are binding upon all Contributing Employers.

12. The Funds' Amended and Restated Collection Policies and Procedures provide that when Funds file suit against a Contributing Employer, any liquidated damages ("LD") incurred by the Contributing Employer after the lawsuit is filed will be assessed LD at the rate of twenty percent (20%) of the contributions owed. This Collection Policy was adopted by the respective Trustees for the Pension, Welfare, Retiree Health and Welfare, and Training Funds.

13. The CBA provides that in the event the Trustees refer an account to legal counsel for collection of delinquent fringe benefit contributions the delinquent employer is liable for the Funds' reasonable attorneys' fees, audit costs, LD, accumulated LD, accumulated interest and filing costs incurred in the collection process.

14. The Funds' Collection Policy provides that any delinquent contributions owed by a Contributing Employer shall bear interest in the amount of twelve percent (12%) per annum, compounded from the due date until the obligation is fully satisfied.

15. In addition to fringe benefit reports, the CBA obligates Oro to submit and pay monthly Dues Reports. Oro is required to deduct from the wages of employees covered by said contract working dues in the amount of three and three-quarter percent (3.75%) of gross wages and shall remit such amounts monthly to the Union office.

16. The CBA also requires Oro to pay contributions to the Industry Funds. These contributions are paid as part of the Dues Reports. The CBA requires Oro to pay eight cents ($.08) for each hour worked by employees covered by the CBA to CAICA, seven cents ($.07) per hour to LECET and seventeen cents ($.17) per hour to LDCLMCC. Thus, the total Industry Fund contribution is thirty-two cents ($.32) per hour.

17. Dues Reports and contributions are due by the 10th day following the month in which the work was performed. Dues Reports and contributions that are not submitted in a timely fashion are assessed LD at ten percent (10%) of the union dues report amount.

18. Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues, which should have been or have been deducted from the wages of covered employees.

19. The CBA and the Funds' respective Trust Agreements require Oro to submit its books and records to Funds on demand for an audit to determine benefit contribution compliance.

20. The Agreement further requires Oro obtain and maintain a surety bond to guaranty the payment of future wages and benefit contributions.

21. On July 3, 2024, Funds selected the independent auditing firm of Legacy Professionals, LLP to conduct a compliance audit of Oro's books and records, covering the period of October 1, 2021 through March 31, 2024 ("Legacy Audit 1"). Legacy Audit 1 results reflected Oro owes Funds for its unpaid benefits (Count I) and dues (Count II), and the corresponding wage audit for the same period ("Wage Audit"), reflects Oro also owes wages and audit costs to the Union, all of which amounts were included in a grievance filed against Oro, resulting in a Joint Grievance Hearing and Award (Count IV). Furthermore, Oro created Oro 1, three days after meeting with the Union and Funds on the Grievance that resulted in the Joint Grievance Committee's Award against Oro, and Oro has since been doing business as Oro 1, specifically to avoid reporting and paying Union rate and benefits (Count III). Funds requested an updated audit of Oro by Legacy Professionals, LLP, covering the period of April 1, 2024 to Present ("Legacy Audit 2") for which Oro failed to comply. Thus, Funds seek Oro's compliance with Legacy Audit 2 as it is obligated and seeks collection of the additional unpaid benefits, LD, interest, audit costs

and Funds' reasonable fees accrued in the forthcoming Legacy Audit 2 (Count V), and also the additional unpaid dues and LD as found owing in Legacy Audit 2 for that period (Count II).

**COUNT I**
**(Failure to Submit and Pay Delinquent Employee Benefit Contributions Per Legacy Audit 1)**

22. Plaintiffs reallege and incorporate paragraphs 1 through 21 as if fully set forth herein.

23. Notwithstanding the obligations imposed by the Agreement and Funds' respective Trust Agreements, Oro performed covered work during the period of October 1, 2021 through March 31, 2024, but Oro:

(a) failed to report and pay $61,362.17 in contributions owed to the Chicago & Vicinity Laborers' District Council Pension Fund as reflected in Legacy Audit 1, covering October 1, 2021 through March 31, 2024, thereby depriving the Pension Fund of contributions, income and information needed to administer that Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b) failed to report and pay $46,820.90 in contributions owed to the Chicago & Vicinity Laborers' District Council Welfare Funds, as reflected in Legacy Audit 1, covering October 1, 2021 through March 31, 2024, thereby depriving the Welfare Fund of contributions, income and information needed to administer that Fund and jeopardizing the welfare benefits of the participants and beneficiaries;

(c) failed to report and pay $21,286.52 in contributions owed to the Chicago & Vicinity Laborers' District Council Retiree Health and Welfare Fund, as reflected in Legacy Audit 1, covering October 1, 2021 through March 31, 2024, thereby depriving the Retiree Welfare Fund

of contributions, income and information needed to administer that Fund and jeopardizing the Retiree Welfare benefits of the participants and beneficiaries;

(d) failed to report and pay $3,605.78 in contributions owed to the Training Fund, as reflected in Legacy Audit 1, covering October 1, 2021 through March 31, 2024, thereby depriving the Training Fund of contributions, income and information needed to administer that Fund and jeopardizing the Training Fund benefits of the participants and beneficiaries;

(e) failed to report and pay $1,307.93 in contributions owed to CAICA, LECET and LDLMCC, as reflected in Legacy Audit 1, covering October 1, 2021 through March 31, 2024, thereby depriving those Industry Funds of contributions, income and information needed to administer those Industry Funds and jeopardizing the benefits of the participants and beneficiaries. Exhibit B attached hereto is a true and accurate copy of Legacy Audit 1 with the Summary of the amounts owed to the Funds as prepared by the auditor.

24. Pursuant to the Agreement and the Funds' respective Trust Agreements, Oro is also liable for the LD assessed against the unpaid amounts owed, as reflected in the Summary of Legacy Audit 1, assessing $26,615.07 in LD on the amounts found owed to the Pension, Welfare, Retiree Welfare, and Training Funds, at the rate of twenty percent (20%) for the unreported monthly amounts owed to those funds, and $130.79 in LD assessed at the rate of ten (10) percent on the amounts found owed to the Industry Funds.

25. On August 6, 2025, the District Council sent copies of Legacy Audit 1 and the Union's corresponding Wage Audit to Oro's, owner and president, Roman Salinas, with a copy of the Union's Grievance 25-44 (See Group Exhibit B, for true and accurate copies of Union's Letter to Salinas, Notice of Grievance and copies of Legacy Audit 1 and the Wage Audit).

26. On March 17, 2026, Funds and Union met with Mr. Salinas and his counsel Todd Miller of Allocco, Miller & Cahill, P.C., at the District Council to review the audit findings and to give Oro the opportunity to respond in an attempt to resolve the audits and the grievance. However, no resolution was reached and to date, Oro has not paid the amounts owed to the Funds per Legacy Audit 1. Nor has Oro paid the amounts owed per the Wage Audit of the same period. Those amounts are included as part of the Union's Grievance No. 25-44 (See Group Exhibit C, true and accurate copies of the Notices to Oro) that culminated in a hearing before the Joint Grievance Committee ("JGC") on June 4, 2026, resulting in the JGC Award (See Group Exhibit C, for a true and accurate copy of the JGC Award)

27. Oro's actions in failing to submit and pay the amounts owed per Legacy Audit 1 violate Section 515 of ERISA, 29 U.S.C. §1145 and Section 301 of the LMRA.

28. Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, and the terms of the Agreement and the Funds' respective Trust Agreements, Oro is liable to Funds for the unpaid contributions, plus LD on all unpaid contributions, accumulative LD on any untimely paid contributions, accumulated interest, audit costs, Funds' reasonable attorneys' fees and court costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs the Funds respectfully request that this Court:

a. enter judgment in sum certain in favor of the Funds and against Defendant Oro Stone Landscaping, LLC. for the principal benefit contribution amounts owed by Defendant, as determined by Legacy Audit 1, covering October 1, 2021 through March 31, 2024, plus liquidated damages, accumulated interest, audit costs; and

b. the Funds' reasonable attorneys' fees and costs incurred in this matter; and

c. order Oro Stone Landscaping, LLC obtain and maintain a surety bond in accordance with the terms of the Agreement; and

d. award Funds any further legal and equitable relief as the Court deems appropriate.

**COUNT II**
**(Failure to Submit and Pay Delinquent Dues )**

29. The Funds re-allege and incorporate the allegations contained in paragraphs 1-28 of this Complaint.

30. Pursuant to agreement, the Funds are duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues, which have been or should have been deducted from the gross wages of covered employees.

31. Dues reports and contributions are due by the 10th following the month in which the work was performed. Dues reports and contributions which are not submitted in a timely fashion are assessed LD at 10% of the report amount.

32. Notwithstanding the obligations imposed by the Agreement, Oro performed covered work from October 1, 2021 through March 31, 2024, as evidenced by Legacy Audit 1 and has failed to withhold and/or report to and forward Union dues that were deducted or should have been deducted from the wages of its employees in the amount of $2,949.83, thereby depriving the Union of income and information needed to administer the Union's dues fund (See Exhibit B-1 Legacy Audit 1 and Summary).

33. Furthermore, Oro's failure to submit timely reports and payments of its dues for the as yet to be audit period of April 1, 2024 to present shall result in additional dues owed for that period to the Union, and under the terms of the Agreement all such delinquent dues amounts are also subject to LD assessed at 10% of the untimely amount.

34. Pursuant to the Agreement, Oro is liable to the Funds for the unpaid Union dues, as well as the LD, accumulated LD, audit costs, reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs the Funds respectfully request this Court:

a. enter judgment in sum certain in favor of the Funds and against Defendant Oro Stone Landscaping, LLC. on the amounts found due and owing per Legacy Audit 1, covering October 1, 2021 through March 31, 2024, for unreported and unpaid Union dues that were or should have been deducted from Oro's covered workers' gross wages;

b. plus additional unpaid dues reports as determined by the pending audit of the period from April 1, 2024 to current; and

c. all related LD, accumulated LD, audit costs, and

d. Plaintiffs' Funds reasonable attorneys' fees and costs; and

e. awarding Plaintiffs' Funds any further legal and equitable relief as the Court deems warranted.

**COUNT III**
**(Alter Ego and/or Single Employer Liability – Oro 1)**

35. Plaintiffs re-allege and incorporate paragraphs 1 through 34 as if set forth herein.

36. From March 20, 2026 forward Oro attempted to avoid its obligations under the Agreement and the respective Trust Agreements by shifting laborers' work covered under the Agreement to Oro Stone Landscaping 1, LLC ("Oro 1").

37. On information and belief, Oro formed Oro 1 solely to continue to operate Oro under the guise of Oro 1, entering into contracts with owners and/or general contractors which included work covered by the Agreement. That work included but is not limited to landscaping, construction, brick work, concrete work, cleaning, removal of debris and receiving of building and

landscaping materials. Oro through its owner and president Roman Salinas used Oro 1 to perform all or some of the laborers' covered work.

38. Oro's owner and president intentionally shifted Oro's covered employees to Oro 1, which company Mr. Salinas also owns and is listed as one of the LLC managers. According to the Illinois Secretary of State the same four managers of Oro are managers of Oro 1, and on information and belief Oro's employees performed laborers' work covered by the Agreement, when working for Oro 1.

39. Covered work performed by Oro 1 by Oro employees was neither reported nor paid for fringe benefit contributions for the hours worked by those employees. By shifting covered work to Oro 1, Oro was able to continue performing laborers' work with its covered employees without incurring the union benefit contributions and dues obligations.

40. On information and belief there is an interrelation of operations and centralized control of labor relations between Oro and Oro 1, as both share identical management, and overlapping business purposes, operations, supervision, and ownership. Specifically, Roman Salinas and his partner Adrian Rodriguez direct, control and manipulate the activities of Oro and Oro 1 including: a) manages the day to day field operations; b) hiring, firing and layoffs; c) supervision of the employees; and d) managing and shifting manpower between Oro and Oro 1; e) preparing bids/proposal; and f) overseeing the preparation of invoices and payment applications.

41. During all portions of Oro 1's existence it has shared the same owner(s), shareholders, officers, management personnel as Oro.

42. Oro and Oro 1 perform similar work as they both provide landscaping, general construction, brick work, concrete work, cleaning, debris removal and receiving of building or

landscaping material. All such work is laborers' work covered under the Agreement and the respective Trust Agreements.

43. According to the filings with the Illinois Secretary of State, Oro and Oro 1 have the same principal business address of 2532 River Road, Apt. 2, River Grove, Illinois and same Registered Agent Roman Salinas. Additionally, on information and belief the entities utilize the same phone number, maintain a similar line of business and customers, share the same workers' compensation policy, and utilize the same financial institutions. Furthermore, both companies perform work in the same trade and geographical jurisdiction of the Plaintiffs' Union.

44. Oro 1's activities and business operations are conducted in a complimentary method to further Oro's business activities. On information and belief that Oro 1's owner and manager Roman Salinas uses Oro 1 to distance himself from the debts owed to the Funds and the Union per Legacy Audit 1, the Wage Audit, the JGC Award, and as to the forthcoming Legacy Audit 2. Oro bids projects and shifts employees to payments through Oro 1 to avoid Oro's obligations under the Agreement and the respective Trust Agreements. Oro shifted its covered workers to Oro 1's payroll three days after its March 17, 2026 pre-grievance meeting with the Union and the Funds. Salinas created Oro 1 on March 20, 2026, such that both companies have become a single integrated enterprise from Oro 1's formation forward.

45. Oro 1 continues to unjustly enrich itself by performing lucrative union jobs while fraudulently avoiding its obligations under the Agreement with the Union and to the Funds pursuant to the CBA and the respective Trust Agreements.

46. Mr. Salinas's reason for paying his Oro employees through Oro 1 is to avoid the Union expenses and to do some projects non-union through Oro 1.

47. Mr. Salinas has failed to comply to requests for records, so the Funds and the Union can assess Oro and Oro 1's compliance with the Agreement and the respective Trust Agreements, covering April 1, 2024 to present ("Legacy Audit 2").

48. As an alter ego to and/or single employer with Oro, Oro 1 is bound to the terms of the Agreement and Funds' respective Trust Agreements and therefore liable for Oro's debts to the Funds and the Union.

WHEREFORE, Plaintiffs respectfully request this Court to enter judgment against Defendants Oro Stone Landscaping, LLC, and Oro Stone Landscaping 1, LLC, as follows:

(a) Find Oro Stone Landscaping 1, LLC is an alter ego of and/or single employer with Oro Stone Landscaping, LLC;

(b) Find Oro Stone Landscaping 1, LLC is jointly and severally liable to the Plaintiffs for the delinquent contributions, dues, interest, liquidated damages and attorneys' fees and court costs owed by Oro Stone Landscaping, LLC, as set forth in Counts I and II above, as well as for the additional amounts determined owed by the JGC Award in Count IV below and as to amounts to be determined per the updated Legacy Audit 2, covering April 1, 2024 to present (See Counts II & V) ;

(c) Enter judgment in sum certain against Oro Stone Landscaping 1, LLC, and Oro Stone Landscaping, LLC., jointly and severally, on amounts found owed by Oro Stone Landscaping, LLC, per the Legacy Audit 1, including principal benefit contributions and dues, liquidated damages, accumulated liquidated damages, interest, audit costs, attorney fees and costs for the period of October 1, 2021 through March 31, 2024, as well as for the additional amounts found owed per the JGC Award in Count IV below and in the future as to the Legacy Audit 2, covering April 1, 2024 to present findings owed, for its delinquent dues and LD thereon (Count

II) and delinquent benefit contributions, plus assessed LD and interest thereon, audit costs and the Funds' attorneys' fees and costs accrued (Count V);

(d) Granting all such other legal and equitable relief as the Court deems just and proper.

**COUNT IV**
**(To Enforce the JGC Award pursuant to Section 301 of the LMRA)**

49. Plaintiffs re-allege and incorporate paragraphs 1 through 48 as if set forth herein.

50. This action is brought pursuant to Section 301 of the LMRA, 29 U.S.C. § 185 to confirm and enforce a final and binding award of the Joint Grievance Committee ("JGC") conducted pursuant to the provisions of the Agreement between the Union and Oro.

51. The Union and Oro are parties to the Agreement attached hereto as Exhibit A-1 that incorporates and adopts the Master Agreements between the Union and various employer associations. One of those Master Agreements, the Chicago Area Independent Construction Association or CAICA Agreement is attached hereto as Exhibit A-2, and for all times relevant governs the terms and conditions of employment of Oro's employees in the bargaining unit represented by the Union.

52. Article 11 of the Joint Agreement sets forth a grievance and arbitration procedure for the resolution of any dispute between the parties to the Agreement, culminating in arbitration in the event that there is a deadlock of the JGC hearing the dispute. Article 11, ¶ 2 provides in relevant part:

> The determination of the JGC shall be governed by majority vote, provided that the Employer representatives and Union representatives shall have equal voting power. If decided by majority vote, the grievance determination and any relief determined to be appropriate shall be final and binding upon all parties.

53. On August 6, 2025, the District Council filed a grievance under the CAICA Agreement, designated Grievance No. 25-44, asserting that Oro violated Articles III, V, VI and

VII, for the underpayment of wages and benefits per the findings of Legacy Audit 1 and the corresponding Wage Audit, reflecting unpaid wages, fringe benefit contributions, underpayment of fringe benefits to the District Council's Taft-Hartley Funds as required by the CAICA Agreement, audit costs owed to the Union for its Wage Audit and to the Funds for Legacy Audit 1 and any additional relief determined appropriate by the JGC ("Grievance No. 25-44"). See Group Exhibit B attached hereto.

54. A copy of Grievance No. 25-44 was served on Oro by certified mail and electronic mail on August 6, 2025, a notice of hearing on February 19, 2025 was also served by certified mail and electronic mail on January 21, 2026. That hearing was postponed by mutual agreement and the Parties met on March 17, 2026 to review the findings of the Wage Audit and Legacy Audit 1 with Oro and its counsel. But no resolution was reached at this meeting and the Joint Grievance hearing was set for April 9, 2026. However, on April 8, 2026, Oro's counsel contacted the Union, stipulating Oro owed the amounts to the Funds and the Union and requested Oro be offered an installment payment plan. See, Group Exhibit C for the Grievance Chain.

55. The undersigned prepared and sent to Oro's counsel Installment Note documents for the amounts owed to the Funds and a separate payment schedule for the Wages and amounts owed to the Union. However, those documents were not returned, rather the undersigned followed up with Oro's counsel and was then informed that Oro was unable to pay those amounts.

56. On June 4, 2026, the JGC convened at the location of the District Council, and determined by majority vote to uphold Grievance No. 25-44, entering an award upholding the grievance, finding Oro owed $163.336.80 in wages, minus all applicable taxes and work dues deductions to employees identified in the Wage Audit, covering October 1, 2021 through March 31, 2024, and further directs Oro to pay the applicable 3.75% work dues deductions to the District

Council's Laborers' Dues Department, to pay $661.00 to the District Council for its Wage Audit cost, and to pay $81,668.40 in LD to the Chicago Laborers' Charitable Foundation. Also, the Award orders Oro to pay $211,156.72 to the Funds for the findings in Legacy Audit 1, covering October 1, 2021 through March 31, 2024, including the principal benefit contributions and dues, LD, interest and the Funds' audit costs, and additionally ordering Oro to also pay $10,102.50 to the Funds for its attorney time to date on this matter. See Group Exhibit C is a true and accurate copy of the JGC Award, as determined on June 4, 2026, which was sent by certified mail and email on that date. Group Exhibit C also included the notice of the hearing that was sent to both Roman Salinas and his counsel.

57. The JGC Award further requires that if Oro fails to comply with paying the Award's relief within seven (7) days, it shall pay an additional ten percent (10%) LD to the Union of the monetary award and all court costs and reasonable attorneys' fees actually incurred by the party enforcing the Award.

58. Due demand having been made by the Union, Oro has failed and refused to comply with the JGC Award within the time period allotted or at any time thereafter.

59. By the conduct described above, Oro has breached the Agreement and violated LMRA Section 301, 29 U.S.C. 185.

WHEREFORE Plaintiffs, Funds and Union respectfully request this Court enter judgment against Defendants Oro Stone Landscaping, LLC and Oro Stone Landscaping 1, LLC as follows:

(a) that this Court enter judgment in favor of the Plaintiffs and against Defendants Oro Stone Landscaping, LLC, and Oro Stone Landscaping 1, LLC, pursuant to Section 301 of the LMRA, confirming the JGC Award; finding and declaring that the Award is final and binding on the parties; and enforcing the Award against Defendants by entering a monetary judgment in the

amounts of $163,336.80 in wages to the affected employees, $661.00 in audit costs and $16,399.78 in liquidated damages on those wages to be paid to the Laborers' District Council, $211,156.72 in members' benefits, dues, interest, liquidated damages, and audit costs owed to the Chicago & Vicinity Laborers' Funds per the Legacy Audit 1, for the period of covering October 1, 2021 through March 31, 2024, $10,102.50 for the Funds' reasonable attorneys' fees and expenses included in the Award for the undersigned's reasonable efforts to collect the amounts owed in this matter to that date, and $81,668.40 in liquidated damages owed to the Chicago Laborers' Charitable Foundation; and

(b) that this Court grant the Plaintiffs any further legal and equitable relief as the Court deems appropriate.

**COUNT V**
**(Failure To Comply with Legacy Audit 2, covering April 1, 2024 to Present for Unpaid Delinquent Employee Benefit Contributions)**

60. Plaintiffs re-allege and incorporate paragraphs 1 through 59 as if set forth herein.

61. Notwithstanding the obligations imposed by the Agreement and the Funds' respective Trust Agreements, Oro and/or Oro 1 performed covered work during the period of April 1, 2024 to the present, but:

(a) failed to report and pay all contributions owed to the Chicago & Vicinity Laborers' District Council Pension Fund from April 1, 2024 to present, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer that Fund and jeopardizing the pension benefits of the participants and beneficiaries.

(b) failed to report and pay all contributions owed to the Chicago & Vicinity Laborers' District Council Welfare Fund from April 1, 2024 to present, thereby depriving the Welfare Fund

of contributions, income and information needed to administer that Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries.

(c) failed to report and pay all contributions owed to the Chicago & Vicinity Laborers' District Council Retiree Health and Welfare Fund from April 1, 2024 to present, thereby depriving the Retiree Welfare Fund of contributions, income and information needed to administer that Fund and jeopardizing the Retiree Welfare benefits of the participants and beneficiaries.

(d) failed to report and pay all contributions owed to the Chicago & Vicinity Laborers' District Council Training Funds from April 1, 2024 to present, thereby depriving the Training Fund of contributions, income and information needed to administer that Fund and jeopardizing the Training Fund benefits of the participants and beneficiaries;

(e) failed to report and pay all contributions owed to the Industry Funds from April 1, 2024 to present, thereby depriving those Industry Funds of contributions, income and information needed to administer those Industry Funds and jeopardizing the benefits of the participants and beneficiaries.

62. Pursuant to the Agreement and the Funds' respective Trust Agreements, Oro and Oro 1 are liable for the liquidated damages assessed against the unpaid amounts found owed from April 1, 2024 to present at twenty percent (20%) for the unreported monthly amount(s) owed to the Pension Fund, Welfare Fund, Retiree Welfare Fund and the Training Fund, and at the rate of ten percent (10%) for the unreported amounts found owed to the Industry Funds, and further all amounts found owed are entitled to the assessment of accumulated interest at the rate of twelve percent (12%) from the date untimely, until the debt is paid.

63. Oro's failure to submit to Legacy Audit 2 and to timely submit monthly reports with payments of fringe benefits violates Section 515 of ERISA, 29 U.S.C. §1145.

64. Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, and the terms of the Agreement and the Funds' respective Trust Agreements, Oro and Oro 1 are liable to Funds for the unpaid contributions, as well as interest and liquidated damages on all such unpaid contributions, and obligated for accumulative liquidated damages on any untimely paid contributions, audit costs, reasonable attorneys' fees and court costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs the Funds respectfully request that this Court:

a. order Defendants Oro Stone Landscaping, LLC and Oro Stone Landscaping 1, LLC to submit its books and records for Legacy Audit 2, covering the period of April 1, 2024 to present;

b. enter judgment in sum certain in favor of the Funds and against Defendants, jointly and severally for the amounts owed, as determined by Legacy Audit 2, covering April 1, 2024 to present, including all principal benefit contributions, plus liquidated damages, accumulated liquidated damages, interest, audit costs and Plaintiffs' reasonable attorney fees and costs;

c. enter judgment in favor of the Funds and against the Defendants for the monthly fringe benefit reports that become due and are unpaid during the pending litigation plus liquidated damages, interest, audit costs and Plaintiffs' reasonable attorney fees and costs;

d. order Oro Stone Landscaping, LLC and Oro Stone Landscaping 1, LLC. to obtain and maintain a surety bond in accordance with the terms of the Agreement; and

e. award Plaintiffs any further legal and equitable relief as the Court deems appropriate.

Respectfully submitted on behalf of the Plaintiffs,

September 8, 2026

Chicago & Vicinity Laborers' District Council Pension Fund, et al.,,

By: /s/ Sara S. Schumann
*Associate Fund Counsel*

Sara S. Schumann
Office of Fund Counsel
Chicago & Vicinity Laborers' Funds
11465 W. Cermak Rd.
Westchester, IL 60154
Direct: (312) 692-1497
Cell: (773) 255-9878
saras@chilpwf.com