**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL PENSION FUND, CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL WELFARE FUND, CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL RETIREE HEALTH AND WELFARE FUND, and CATHERINE WENSKUS, not individually but as Administrator of the Funds, | ) | |
| and | ) | CIVIL ACTION |
| CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO & VICINITY | ). | |
| *Plaintiffs,* | ) | Case No.: 26-cv-10831 |
| v. | ) | |
| ORO STONE LANDSCAPING, LLC, an Illinois Limited liability corporation, and ORO STONE LANDSCAPING 1, LLC, an Illinois limited liability corporation, | ) | |
| *Defendants.* | ) | |

**DEFENDANTS' ANSWERS TO PLAINTIFFS' AMENDED COMPLAINT**

NOW COME Defendants, ORO STONE LANDSCAPING, LLC and ORO STONE LANDSCAPING 1, LLC, by and through their undersigned Counsel, Allocco, Miller & Cahill, P.C., and for their Answers to the Plaintiffs' Amended Complaint state as follows:

1. Jurisdiction is based on Sections 502(e)(1) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132(e)(1) and (2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

**ANSWER**: Defendants admit the allegations in paragraph 1.

2. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391(a) and (b).

**ANSWER**: Defendants admit the allegations in paragraph 2.

3. The Funds are multiemployer benefit plans within the meanings of Section 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust ("Trust Agreements") in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. §186(c)(5). The Funds have offices and conduct business within this District.

**ANSWER**: Defendants admit the allegations in paragraph 3.

4. Plaintiff Catherine Wenskus is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General Laborers' District Council of Chicago & Vicinity Training Fund, the Industry Funds, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the District Council. With respect to such matters, Wenskus is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

**ANSWER**: Defendants admit the allegations in paragraph 4.

5. The Union is a labor organization within the meaning of the LMRA, 29 U.S.C. §185(a). The Union operates and maintains its offices within this District, with its principal office located at 999 McClintock Drive, Burr Ridge, Illinois. The Union negotiates collective bargaining agreements for and on behalf of its affiliated local unions, including Laborers' Local One.

**ANSWER**: Defendants admit the allegations in paragraph 5.

6. Defendant Oro Stone Landscaping, LLC ("Oro") is an Illinois limited liability corporation registered with the state, and, at all times relevant, Oro conducts business within this District and is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

**ANSWER**: Defendants admit the allegations in paragraph 6.

7. Defendant Oro Stone Landscaping 1, LLC ("Oro 1") is an Illinois limited liability corporation registered with the state that also does business as Oro, and, at all times relevant, conducts business within this District and is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c). Oro 1 is being sued as Oro's alter ego and/or on a single employer theory, based on the formation date of Oro 1, the lack of reporting of Oro, since Oro 1 formation, and other evidence, including the findings of a Joint Grievance Committee Award in a 301 Enforcement action (See Counts III IV below).

**ANSWER**: Defendants admit that Oro 1 is an Illinois LLC and deny remaining allegations in paragraph 7.

8. Oro and Laborers' Local One are parties to collective bargaining agreements, at least since June 9, 2017 (A true and accurate copy of Oro's Memorandum Agreement entered into between Local One and Oro that adopts and incorporates several Master Agreements between the Union and various employer associations, and also binds Oro to the Funds respective Trust Agreements, is attached hereto as Exhibit A-1). The Memorandum Agreement and the Master Agreements together are referred to as the CBA or the Agreement (A true and accurate copy of CAICA that is one of the Master Agreements is attached hereto as Exhibit A-

2).

**ANSWER**: Defendants admit the allegations in paragraph 8.

9. The Funds have been duly authorized by the Union to act as collection agent for the Construction and General Laborers' District Council of Chicago & Vicinity Training Fund ("Training Fund"), Midwest Construction Industry Advancement Fund ("MCIAF"), Mid-American Regional Bargaining Association Industry Advancement Fund ("MARBA"), Chicagoland Construction Safety Council ("Safety Fund"), Laborers' Employers' Cooperation and Education Trust ("LECET"), Concrete Contractors Association ("CCA"), CDCNI/CA WCC Contractors' Industry Advancement Fund ("Wall & Ceiling Fund"), CISCO Uniform Drug/Alcohol Abuse Program, Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), Will Grundy Industry Trust Advancement Fund ("WGITA"), Illinois Small Pavers Association Fund ("ISPA"), and Chicago Area Independent Construction Association ("CAICA"), in the collection of contributions due to those funds that are collectively referred to as the Industry Funds or Ancillary Funds.

**ANSWER**: Defendants admit the allegations in paragraph 9.

10. The Funds' respective Trust Agreements obligate Oro to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, retiree health and welfare benefits and for the training fund and to submit monthly remittance reports in which Oro, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee. Pursuant to the terms of the Agreement and the Funds respective Trust Agreements, contributions which are not submitted in a timely fashion are assessed liquidated damages and interest.

**ANSWER**: Defendants admit the allegations in paragraph 10.

11. The Pension, Welfare, Retiree Health and Welfare Funds respective Trust Agreements provide the respective Trustees with the powers to formulate, establish and maintain collection procedures for the collection of contributions, and those actions, procedures and policies are binding upon all Contributing Employers.

**ANSWER**: Defendants admit the allegations in paragraph 11.

12. The Funds' Amended and Restated Collection Policies and Procedures provide that when Funds file suit against a Contributing Employer, any liquidated damages ("LD") incurred by the Contributing Employer after the lawsuit is filed will be assessed LD at the rate of twenty percent (20%) of the contributions owed. This Collection Policy was adopted by the respective Trustees for the Pension, Welfare, Retiree Health and Welfare, and Training Funds.

**ANSWER**: Defendants admit the allegations in paragraph 12.

13. The CBA provides that in the event the Trustees refer an account to legal counsel for collection of delinquent fringe benefit contributions the delinquent employer is liable for the Funds' reasonable attorneys' fees, audit costs, LD, accumulated LD, accumulated interest and filing costs incurred in the collection process.

**ANSWER**: Defendants admit the allegations in paragraph 13.

14. The Funds' Collection Policy provides that any delinquent contributions owed by a Contributing Employer shall bear interest in the amount of twelve percent (12%) per annum, compounded from the due date until the obligation is fully satisfied.

**ANSWER**: Defendants admit the allegations in paragraph 14.

15. In addition to fringe benefit reports, the CBA obligates Oro to submit and pay

monthly Dues Reports. Oro is required to deduct from the wages of employees covered by said contract working dues in the amount of three and three-quarter percent (3.75%) of gross wages and shall remit such amounts monthly to the Union office.

**ANSWER**: Defendants admit the allegations in paragraph 15.

16. The CBA also requires Oro to pay contributions to the Industry Funds. These contributions are paid as part of the Dues Reports. The CBA requires Oro to pay eight cents ($.08) for each hour worked by employees covered by the CBA to CAICA, seven cents ($.07) per hour to LECET and seventeen cents ($.17) per hour to LDCLMCC. Thus, the total Industry Fund contribution is thirty-two cents ($.32) per hour.

**ANSWER**: Defendants admit the allegations in paragraph 16.

17. Dues reports and contributions are. Due by the 10th day following the month in which the work was performed. Dues Reports and contributions that are not submitted in a timely fashion are assessed LD at ten percent (10%) of the union dues report amount.

**ANSWER**: Defendants admit the allegations in paragraph 17.

18. Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues, which should have been or have been deducted from the wages of covered employees.

**ANSWER**: Defendants admit the allegations in paragraph 18.

19. The CBA and the Funds' respective Trust Agreements require Oro to submit its books and records to Funds on demand for an audit to determine benefit contribution compliance.

**ANSWER**: Defendants admit the allegations in paragraph 19.

20. The Agreement further requires Oro obtain and maintain a surety bond to guaranty the payment of future wages and benefit contributions.

**ANSWER**: Defendants admit the allegations in paragraph 20.

21. On July 3, 2024, Funds selected the independent auditing firm of Legacy Professionals, LLP to conduct a compliance audit of Oro's books and records, covering the period of October 1, 2021 through March 31, 2024 ("Legacy Audit 1"). Legacy Audit 1 results reflected Oro owes Funds for its unpaid benefits (Count I) and dues (Count II), and the corresponding wage audit for the same period ("Wage Audit"), reflects Oro also owes wages and audit costs to the Union, all of which amounts were included in a grievance filed against Oro, resulting in a Joint Grievance Hearing and Award (Count IV). Furthermore, Oro created Oro 1, three days after meeting with the Union and Funds on the Grievance that resulted in the Joint Grievance Committee's Award against Oro, and Oro has since been doing business as Oro 1, specifically to avoid reporting and paying Union rate and benefits (Count III). Funds requested an updated audit or Oro by Legacy Professionals, LLP, covering the period of April 1, 2024 to Present ("Legacy Audit 2") for which Oro failed to comply. Thus, Funds seek Oro's compliance with Legacy Audit 2 as it is obligated and seeks collection of the additional unpaid benefits, LD, interest, audit costs and Funds' reasonable fees accrued in the forthcoming Legacy Audit 2 (Count V), and also the additional unpaid dues and LD as found owing in Legacy Audit 2 for that period (Count II).

**ANSWER**: Defendants admit The Funds selected Legacy Professionals, LLP to conduct the compliance audit covering the period of October 1, 2021 through March 31, 2024 and deny the remaining allegations in paragraph 21.

**COUNT I**
**(Failure to Submit and Pay Delinquent Employee Benefit Contributions Per Legacy Audit 1)**

22. Plaintiffs reallege and incorporate paragraphs 1 through 21 as if fully set forth herein.

**ANSWER**: Defendants restate their answers to paragraphs 1 through 22.

23. Notwithstanding the obligations imposed by the Agreement and Funds' respective Trust Agreements, Oro performed covered work during the period of October 1, 2021 through March 31, 2024, but Oro:

(a) failed to report and pay $61,362.17 in contributions owed to the Chicago & Vicinity Laborers' District Council Pension Fund as reflected in Legacy Audit 1, covering October 1, 2021 through March 31, 2024, thereby depriving the Pension Fund of contributions, income and information needed to administer that Fund and jeopardizing the pension benefits of the participants and beneficiaries;

**ANSWER**: Defendants deny the allegations in paragraph 23(a).

(b) failed to report and pay $46,820.90 in contributions owed to the Chicago & Vicinity Laborers' District Council Welfare Funds, as reflected in Legacy Audit 1, covering October 1, 2021 through March 31, 2024, thereby depriving the Welfare Fund of contributions, income and information needed to administer that Fund and jeopardizing the welfare benefits of the participants and beneficiaries;

**ANSWER**: Defendants deny the allegations in paragraph 23(b).

(c) failed to report and pay $21,286.52 in contributions owed to the Chicago & Vicinity Laborers' District Council Retiree Health and Welfare Funds, as reflected in Legacy Audit 1, covering October 1, 2021 through March 31, 2024, thereby depriving the Retiree

Welfare Fund of contributions, income and information needed to administer that Fund and jeopardizing the welfare Retiree Welfare benefits of the participants and beneficiaries;

**ANSWER**: Defendants deny the allegations in paragraph 23(c).

(d) failed to report and pay $3,605.78 in contributions owed to the Training Fund, as reflected in Legacy Audit 1, covering October 1, 2021 through March 31, 2024, thereby depriving the Training Fund of contributions, income and information needed to administer that Fund and jeopardizing the Training benefits of the participants and beneficiaries;

**ANSWER**: Defendants deny the allegations in paragraph 23(d).

(e) failed to report and pay $1,307.93 in contributions owed to CAICA, LECET and LDLMCC, as reflected in Legacy Audit 1, covering October 1, 2021 through March 31, 2024, thereby depriving the Industry Funds of contributions, income and information needed to administer those Industry Funds and jeopardizing the benefits of the participants and beneficiaries. Exhibit B attached hereto is a true and accurate copy of Legacy Audit 1 with the Summary of the amounts owed to the Funds as prepared by the auditor;

**ANSWER**: Defendants deny the allegations in paragraph 23(e).

24. Pursuant to the Agreement and the Funds' respective Trust Agreements, Oro is also liable for the LD assessed against the unpaid amounts owed, as reflected in the Summary of Legacy Audit 1, assessing $26,615.07 in LD on the amounts found owed to the Pension, Welfare, Retiree Welfare, and Training Funds, at the rate of twenty percent (20%) for the unreported monthly amounts owed to those funds, and $130.79 in LD assessed at the rate of ten (10) percent on the amounts found owed to the Industry Funds.

**ANSWER**: Defendants deny the allegations in paragraph 24.

25. On August 6, 2025, the District Council sent copies of Legacy Audit 1 and

the Union's corresponding Wage Audit to Oro's, owner and president, Roman Salinas, with a copy of the Union's Grievance 25-44 (See Exhibit B, for true and accurate copies of Union Letter to Salinas, Notice of Grievance and copies of Legacy Audit 1 and the Wage Audit).

**ANSWER**: Defendants admit the allegations in paragraph 25.

26. On March 17, 2026, Funds and Union met with Mr. Salinas and his counsel Todd Miller of Allocco, Miller & Cahill, P.C., at the District Council to review the audit findings and to give Oro the opportunity to respond in an attempt to resolve the audits and the grievance. However, no resolution was reached and to date, Oro has not paid the amounts owed to the Funds per Legacy Audit 1. Nor has Oro paid the amounts owed per the Wage Audit of the same period. Those amounts are included as part of the Union's Grievance No. 25-44 (See Group Exhibit C, true and accurate copies on the Notices to Oro) that culminated in a hearing before the Joint Grievance Committee ("JGC") on June 4, 2026, resulting in the JGC Award (See Group Exhibit C, for a true and accurate copy of the JGC Award).

**ANSWER**: Defendants admit the allegations in paragraph 26.

27. Oro's actions in failing to submit and pay the amounts owed per Legacy Audit 1 violate Section 515 of ERISA, 29 U.S.C. §1145 and Section 301 of the LMRA.

**ANSWER:** Defendants deny the allegations in paragraph 27.

28. Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, and the terms of the Agreement and the Funds' respective Trust Agreements, Oro is liable to Funds for the unpaid contributions, plus LD on all unpaid contributions, accumulative LD on any untimely paid contributions, accumulated interest, audit costs, Funds' reasonable attorneys' fees and court costs, and such other legal and equitable relief as the Court deems appropriate.

**ANSWER**: Defendants deny the allegations in paragraph 28.

**COUNT II**
**(Failure to Submit and Pay Delinquent Dues)**

29. The Funds re-allege and incorporate the allegations contained in paragraph 1-28 of this Complaint.

**ANSWER**: Defendants restate their answers to paragraphs 1 through 28.

30. Pursuant to agreement, the Funds are duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues, which have been or should have been deducted from the gross wages of covered employees.

**ANSWER**: Defendants admit the allegations in paragraph 30.

31. Dues reports and contributions due by the 10th following the month in which the work was performed. Dues reports and contributions which are not submitted in a timely fashion are assessed LD at 10% of the report amount.

**ANSWER**: Defendants admit the allegations in paragraph 31.

32. Notwithstanding the obligations imposed by the agreement, Oro performed covered work from October 1, 2021 through March 31, 2024, as evidenced by Legacy Audit 1 and has failed to withhold and/or report to and forward Union dues that were deducted or should have been deducted from wages of its employees in the amount of $2,949.83, thereby depriving the Union of income and information needed to administer the Union's dues fund (See Exhibit B-1 Legacy Audit 1 and summary).

**ANSWER**: Defendants deny the allegations in paragraph 32.

33. Furthermore, Oro's failure to submit timely reports and payments of its dues for the as yet to be audit period of April 1, 2024 to present shall result in additional dues

owed for that period to the Union, and under the terms of the Agreement all such delinquent dues amounts are also subject to LD assessed at 10% of the untimely amount.

**ANSWER**: Defendants deny the allegations in paragraph 33.

34. Pursuant to the Agreement, Oro is liable to the Funds for the unpaid Union Dues, as well as the LD, accumulated LD, audit costs, reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

**ANSWER**: Defendants deny the allegations in paragraph 34.

**COUNT III**
**(Alter-Ego and/or Single Employer Liability – Oro 1)**

35. Plaintiffs re-allege and incorporate paragraphs 1 through 34 as if set forth herein.

**ANSWER**: Defendants restate their answers to paragraphs 1 through 34.

36. From March 20, 2026 forward Oro attempted to avoid its obligations under the Agreement and the respective Trust Agreements by shifting laborers' work covered under the Agreement to Oro Stone Landscaping 1, LLC ("Oro 1").

**ANSWER**: Defendants deny the allegations in paragraph 36.

37. On information and belief, Oro formed Oro 1 solely to continue to operate Oro under the guise of Oro 1, entering into contracts with owners and/or general contractors which included work covered by the Agreement. That work included but is not limited to landscaping, construction, brick work, concrete work, cleaning removal of debris and receiving of building and landscaping materials. Oro through its owner and president Roman Salinas used Oro 1 to perform all or some of the laborers' covered work.

**ANSWER**: Defendants deny the allegations in paragraph 37.

38. Oro's owner and president intentionally shifted Oro's covered employees to Oro 1, which company Mr. Salinas also owns and is listed as one of the LLC managers. According to the Illinois Secretary of State the same four managers of Oro are managers of Oro 1, and on information and belief Oro's employees performed laborers' work covered by the Agreement, when working for Oro 1.

**ANSWER**: Defendants deny the allegations in paragraph 38.

39. Covered work performed by Oro 1 by Oro employees was neither reported nor paid for fringe benefit contributions for the hours worked by those employees. By shifting covered work to Oro 1, Oro was able to continue performing laborers' work with its covered employees without incurring the union benefit contributions and dues obligations.

**ANSWER**: Defendants deny the allegations in paragraph 39.

40. On information and belief there is an interrelation of operations and centralized control of labor relations between Oro and Oro 1, as both share identical management, and overlapping business purposes, operations, supervision, and ownership. Specifically, Roman Salinas and his partner Adrian Rodriguez direct, control and manipulate the activities of Oro and Oro 1 including: a) manages the day to day field operations; b) hiring, firing, and layoffs; c) supervision of the employees; and d) managing and shifting manpower between Oro and Oro 1; e) preparing bids/proposal; and f) overseeing the preparation of invoices and payment applications.

**ANSWER**: Defendants deny the allegations in paragraph 40.

41. During all portions of Oro 1's existence it has shared the same owner(s), shareholders, officers, management personnel as Oro.

**ANSWER**: Defendants deny the allegations in paragraph 41.

42. Oro and Oro 1 perform similar work as they both provide landscaping, general construction, brick work, concrete work, cleaning, debris removal and receiving of building or landscaping materia. All such work is laborers' work covered under the Agreement an the respective Trust Agreements.

**ANSWER**: Defendants deny the allegations in paragraph 42.

43. According to the filings with the Illinois Secretary of State, Oro and Oro 1 have the same principal business address of 2532 River Road, Apt. 2, River Grove, Illinois and same Registered Agent Roman Salinas. Additionally, on information and belief the entities utilize the same phone number, maintain a similar line of business and customers, share the same workers' compensation policy, and utilize the same financial institutions. Furthermore, both companies perform work in the same trade and geographical jurisdiction of the Plaintiffs' Union.

**ANSWER**: Defendants admit the Secretary of State records show Oro and Oro 1 have the same principal business address and same Registered Agent. Defendants deny the remaining allegations in paragraph 43.

44. Oro 1's activities and business operations are conducted in a complimentary method to further Oro's business activities. On information and belief that Oro 1's owner and manager Roman Salinas uses Oro 1 to distance himself from the debts owed to the Funds and the Union per Legacy Audit 1, the Wage Audit, the JGC Award, and as to the forthcoming Legacy Audit 2. Oro bids projects and shifts employees to payments through Oro 1 to avoid Oro's obligations under the Agreement and respective Trust Agreements. Oro shifted its covered workers to Oro 1's payroll three days after its March 17, 2026 pre-grievance meeting with the Union and the Funds. Salinas created Oro 1 on March 20, 2026, such that both

companies have become a single integrated enterprise from Oro 1's formation forward.

**ANSWER**: Defendants deny the allegations in paragraph 44.

45. Oro 1 continues to unjustly enrich itself by performing lucrative union jobs while fraudulently avoiding its obligations under the Agreement with the Union and to the Funds pursuant to the CBA and the respective Trust Agreements.

**ANSWER**: Defendants deny the allegations in paragraph 45.

46. Mr. Salinas's reason for paying his Oro employees through Oro 1 is to avoid the Union expenses and do some projects non-union through Oro 1.

**ANSWER**: Defendants deny the allegations in paragraph 46.

47. Mr. Salinas has failed to comply to requests for records, so the Funds and the Union can assess Oro and Oro 1's compliance with the Agreement and the respective Trust Agreements, covering April 1, 2024 to present ("Legacy Audit 2").

**ANSWER**: Defendants deny the allegations in paragraph 47.

48. As an alter ego to and/or single employer with Oro, Oro 1 is bound to the terms of the Agreement and Funds' respective Trust Agreements and therefore liable for Oro's debts to the Funds and the Union.

**ANSWER**: Defendants deny the allegations in paragraph 48.

**COUNT IV**
**(To Enforce the JGC Award pursuant to Section 301 of the LMRA)**

49. Plaintiffs reallege and incorporate paragraphs 1 through 48 as if set forth herein.

**ANSWER**: Defendants restate their answers to paragraphs 1 through 48.

50. This action is brought pursuant to Section 301 of the LMRA, 29 U.S.C. § 185 to confirm and enforce a final and binding award of the Joint Grievance Committee

("JGC") conducted pursuant to the provisions of the Agreement between the Union and Oro.

**ANSWER**: Defendants admit the allegations in paragraph 50.

51. The Union and Oro are parties to the Agreement attached hereto as Exhibit A-1 that incorporates and adopts the Master Agreements between the Union and various employer associations. One of those Master Agreements between the Union and various employer associations. One of those Master Agreements, the Chicago Area Independent Construction Association or CAICA Agreement is attached hereto as Exhibit A-2, and for all times relevant governs the terms and conditions of employment of Oro's employees in the bargaining unit represented by the Union.

**ANSWER**: Defendants admit the allegations in paragraph 51.

52. Article II of the Joint Agreement sets forth a grievance and arbitration procedure for the resolution of any dispute between the parties to the Agreement, culminating in arbitration in the event that there is a deadlock of the JGC hearing the dispute. Article II, ¶ 2 provides in relevant part:

> The determination of the JGC shall be governed by majority vote, provided that the Employer representatives and Union representatives shall have equal voting power. If decided by majority vote, the grievance determination and any relief determined to be appropriate shall be final and binding upon all parties.

**ANSWER**: Defendants admit the allegations in paragraph 52.

53. On August 6, 2025, the District Council filed a grievance under the CAICA Agreement, designated Grievance No. 25-44, asserting that Oro violated Articles III, V, VI and VII, for the underpayment of wages and benefits per the findings of Legacy Audit 1 and the corresponding Wage Audit, reflecting unpaid wages, fringe benefit contributions, underpayment of fringe benefits to the District Council's Taft-Hartley Funds as required by

the CAICA Agreement, audit costs owed to the Union for its Wage Audit and to the Funds for Legacy Audit 1 and any additional relief determined appropriate by the JGC ("Grievance No. 25-44"). See Group Exhibit B attached hereto.

**ANSWER**: Defendants admit the allegations in paragraph 53.

54. A copy of Grievance No. 25-44 was served by Oro by certified mail and electronic mail on August 6, 2025, a notice of hearing on February 19, 2025 was also served by certified mail and electronic mail on January 21, 2026. That hearing was postponed by mutual agreement and the Parties met on March 17, 2026 to review the findings of the Wage Audit and Legacy Audit 1 with Oro and its counsel. But no resolution was reached at this meeting and the Joint Grievance hearing was set for April 9, 2026. However, on April 8, 2026, Oro's counsel contacted the Union, stipulating Oro owed the amounts to the Funds and the Union and requested Oro be offered an installment payment plan. See, Group Exhibit C for the Grievance Chain.

**ANSWER**: Defendants admit the allegations in paragraph 54.

55. The undersigned prepared and sent to Oro's counsel Installment Note documents for the amounts owed to the Funds and a separate payment schedule for the Wages and amounts owed to the Union. However, those documents were not returned, rather the undersigned followed up with Oro's counsel and was then informed that Oro was unable to pay those amounts.

**ANSWER**: Defendants admit the allegations in paragraph 55.

56. On June 4, 2026, the JGC convened at the location of the District Council, and determined by majority vote to uphold Grievance No. 25-44, entering an award upholding the grievance, finding Oro owed $163.336.80 [sic] in wages, minus all applicable

taxes and work dues deductions to employees identified in the Wage Audit, covering October 1, 2021 through March 31, 2024, and further directs Oro to pay the applicable 3.75% work dues deductions to the District Council's Laborers' Due Department, to pay $661.00 to the District Council for its Wage Audit cost, and to pay $81,668.40 in LD to the Chicago Laborers' Charitable Foundation. Also, the Award orders Oro to pay $211,156.72 to the Funds for findings in Legacy Audit 1, covering October 1, 2021 through March 31, 2024, including the principal benefit contributions and dues, LD, interest and the Funds' audit costs, and additionally ordering Oro to also pay $10,102.50 to the Funds for its attorney time to date on this matter. See Group Exhibit C is a true and accurate copy of the JGC award, as determined on June 4, 2026, which was sent by certified mail and email on that date. Group Exhibit C also included the notice of the hearing that was sent to both Roman Salinas and his counsel.

**ANSWER**: Defendants admit the allegations in paragraph 56.

57. The JGC Award further requires that if Oro fails to comply with paying the Award's relief within seven (7) days, it shall pay an additional ten percent (10%) LD to the Union of the monetary award and all court costs and reasonable attorneys' fees actually incurred by the party enforcing the Award.

**ANSWER**: Defendants admit the allegations in paragraph 57.

58. Due demand having been made by the Union, Oro has failed and refused to comply with the JGC Award within the time period allotted or at any time hereafter.

**ANSWER**: Defendants admit the allegations in paragraph 58.

59. By the conduct described above, Oro has breached the Agreement and violated LMRA Section 301, 29 U.S.C. 185.

**ANSWER**: Defendants admit the allegations in paragraph 59.

**COUNT V**
**(Failure to Comply with Legacy Audit 2, covering April 1, 2024 to Present for Unpaid Delinquent Employee Benefit Contributions)**

60. Plaintiffs reallege and incorporate paragraphs 1 through 59 as if set forth herein.

**ANSWER**: Defendants restate answers to paragraphs 1 through 59.

61. Notwithstanding the obligations imposed by the Agreement and the Fund's respective Trust Agreements, Oro and/or Oro 1 performed covered work during the period of April 1, 2024 to the present, but:

(a) failed to report and pay all contributions owed to the Chicago & Vicinity Laborers' District Council Pension Fund from April 1, 2024 to present, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer that Fund and jeopardizing the pension benefits of the participants and beneficiaries.

(b) failed to report and pay all contributions owed to the Chicago & Vicinity Laborers' District Council Welfare Fund from April 1, 2024 to present, thereby depriving the Welfare Fund of contributions, income and information needed to administer that Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries.

(c) failed to report and pay all contributions owed to the Chicago & Vicinity Laborers' District Council Retiree Health and Welfare Fund from April 1, 2024 to present, thereby depriving the Retiree Welfare Fund of contributions, income and information needed to administer that Fund and jeopardizing the Retiree welfare benefits of the participants and beneficiaries.

(d) failed to report and pay all contributions owed to the Chicago & Vicinity

Laborers' District Council Training Funds from April 1, 2024 to present, thereby depriving the Training Fund of contributions, income and information needed to administer that Fund and jeopardizing the Training fund benefits of the participants and beneficiaries.

(e) failed to report and pay all contributions owed to the Industry Funds from April 1, 2024 to present, thereby depriving those Industry Funds of contributions, income and information needed to administer those Industry Funds and jeopardizing the benefits of the participants and beneficiaries.

**ANSWER**: Defendants admit that Oro performed covered work during the period of April 1, 2024 to the present and deny the remaining allegations in paragraph 61(a)-(e).

62. Pursuant to the Agreement and the Funds' respective Trust Agreements, Oro and Oro 1 are liable for the liquidated damages assessed against the unpaid amounts found owed from April 1, 2024 to present at twenty percent (20%) for the unreported amount(s) owed to the Pension Fund, Welfare Fund, Retiree Welfare Fund and the Training Fund, and at the rate of ten percent (10%) for the unreported amounts found owed to the Industry Funds, and further all amounts found owed are entitled to the assessment of accumulated interest at the rate of twelve percent (12%) from the date untimely, until the debt is paid.

**ANSWER**: Defendants admit the allegations in paragraph 62.

63. Oro's failure to submit to Legacy Audit 2 and to timely submit monthly reports with payments of fringe benefits violates Section 515 of ERISA, 29 U.S.C. §1145.

**ANSWER**: Defendants deny the allegations in paragraph 63.

64. Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, and the terms of the Agreement and the Funds' respective Trust Agreements, Oro and Oro 1 are liable to Funds for the unpaid

contributions, as well as interest and liquidated damages on all such unpaid contributions, and obligated for accumulative liquidated damages on any untimely paid contributions, audit costs, reasonable attorneys' fees and court costs, and such other legal and equitable relief as the Court deems appropriate.

**ANSWER:** Defendants deny the allegations in paragraph 64.

Dated: October 22, 2026

Respectfully submitted,

ORO STONE LANDSCAPING, LLC and
ORO STONE LANDSCAPING 1, LLC

By: /s/ Todd A. Miller
Attorney for Defendant

Todd A. Miller (ARDC #6216561)
Kathleen M. Cahill (ARDC #6269486)
**Allocco, Miller, & Cahill P.C.**
*Attorney for Defendant*
20 North Wacker Drive, Suite 3517
Chicago, IL 60606
Telephone: (312) 675-4325
Fax: (312) 675-4326
tam@alloccomiller.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on today's date, **October 22, 2026, 2026**, he served a copy of **Defendant's Answer to Plaintiffs' Complaint** via CM/ECF to the Plaintiff's counsel at the email/address below:

Sara S. Schumann
Office of Fund Counsel
Chicago & Vicinity Laborers' Funds
11465 W. Cermak Rd.
Westchester, IL 60154
Direct: (312) 692-1497
Cell: (773) 255-9878
saras@chilpwf.com

/s/ Todd A. Miller
Attorney for Defendant
**Allocco, Miller, & Cahill P.C.**
20 North Wacker Drive, Suite 3517
Chicago, IL 60606
Telephone: (312) 675-4325
Fax: (312) 675-4326
tam@alloccomiller.com
State Bar no. 6216561